Appeal from Third Judicial District Court, Parish of Claiborne; J. E. Reynolds, Judge.

T. T. Land, of Shreveport, for appellant.
A. V. Coco, Atty. Gen., and W. D. Goff, Dist. Atty., of Arcadia (T. S. Walmsley, of New Orleans, of counsel), for the State.

By the WHOLE COURT.

BRUNOT, J. The defendant was charged with manslaughter. He was tried, convicted of the crime charged, and was sentenced to not less than 18 months nor more than 3 years at hard labor, in the Louisiana state penitentiary. From this verdict and sentence he has appealed.

The only bill of exception presented for our consideration was reserved to the overruling of a motion for a new trial, based solely on the allegation that the verdict of the jury was contrary to the law and the evidence.

This court has repeatedly held that:

"A motion for a new trial, based solely upon the mere and unsupported allegation that the verdict is contrary to the law and the evidence, presents nothing to the appellate court for review." State v. Bill Alexander, 99 South. 427;[1] State v. Green, 43 La. Ann. 402, 9 South. 42; State v. Hobgood, 46 La. Ann. 855, 15 South. 406; State v. Barnes, 48 La. Ann. 460, 19 South. 251; State v. Jones, 112 La. 980, 36 South. 825; State v. Henderson, 113 La. 232, 36 South. 950; State v. Ferguson, 114 La. 70, 38 South. 23; State v. Labry, 124 La. 748, 50 South. 700;

[1] 155 La. 527.

State v. Robertson, 133 La. 806, 63 South. 363.

There is no assignment of errors and there is no apparent error in the record.

The verdict of the jury and the judgment and sentence appealed from are therefore affirmed.

---

(101 South. 113)

No. 26144.

Succession of WILLIAMS.

(Oct. 29, 1923. On Rehearing on Motion to Dismiss Appeal, March 8, 1924. On the Merits, April 30, 1924. Rehearing Denied by Whole Court June 6, 1924.)

(Syllabus by Editorial Staff.)

1. Appeal and error ☞397—No petition and citation of appeal necessary where motion made in open court.

Where motion for appeal is made in open court at same term of court, no petition and citation of appeal is necessary, under Code Prac. art. 573.

2. Appeal and error ☞430(1)—Appeal must be dismissed where it does not appear motion for was made in open court, in absence of citation of appeal.

Where it does not appear that motion for appeal was made in open court at same term, and there was no citation of appeal or prayer therefor, motion for dismissal of appeal must be granted with right on application for rehearing to show that the motion was made in open court during the term.

On Rehearing on Motion to Dismiss Appeal.

3. Appeal and error ☞9—Application for rehearing unnecessary to entitle party to appeal.

Party cast in a suit need not apply for a rehearing or new trial in order to entitle him to appeal.

4. Appeal and error ☞429—Ground of motion for dismissal held waived.

A ground for dismissal of appeal that no citation of appeal was issued or served was waived by preceding ground that appellant failed to apply in trial court for a rehearing or for a new trial.

**5. Appeal and error ☞435—Appearance for any purpose waiver of motion to dismiss for want of citation of appeal.**

Appearance for any other purpose is a waiver of motion to dismiss for want of citation of appeal.

On the Merits.

**6. Executors and administrators ☞488—Succession; testamentary executors receiving legacy not entitled to commission.**

A testamentary executor who was left a legacy is not entitled to commissions if he accepts the legacy, unless testator expresses intention that he should have legacy and commission, in view of Rev. Civ. Code, art. 1686.

**7. Executors and administrators ☞109(2)— Succession; expenditure for tomb held not subject to objection.**

Expenditure of $7,350 for a marble tomb by executor was proper where in accordance with testator's desire as expressed in will, there being no forced heirs, but only collateral relations.

**8. Executors and administrators ☞109(2)— Succession; executor held to have acted properly in providing for perpetual keeping of tomb.**

No meritorious objection could be made to an expenditure of $400 for perpetual care of tomb of testator without heirs in the country, there being neither forced heirs nor creditors to be satisfied.

**9. Executors and administrators ☞111(6)— Succession; attorney's fee held excessive.**

Attorney's fee of $2,033 or over 9 per cent. on full inventoried value of estate, in which there was no complicated litigation or unusual expenditure of time or labor, *held* excessive, and reduced to 5 per cent.

**10. Executors and administrators ☞111(6)— Succession; factors to be considered in fixing fees of attorney employed by executors.**

In fixing fees of attorneys employed by executors, exertion of legal knowledge, responsibility incurred, labor bestowed, and amount involved constitute principal factors to be considered.

**11. Executors and administrators ☞111(6)— Succession; court to exercise own judgment in fixing executor's attorney's fee.**

Court must exercise its own judgment in approving fee of executor's attorney, and be guided but not controlled by expert testimony of lawyers.

**12. Executors and administrators ☞221(5)— Succession; attorney's claim for professional services must be proved by at least one credible witness and corroborating circumstances.**

Under Rev. Civ. Code art. 2277, an attorney's claim for professional services in excess of $500 rendered decedent must be proved by at least one credible witness and other corroborating circumstances.

Appeal from Civil District Court, Parish of Orleans; Wm. H. Byrnes, Judge.

In the matter of the succession of A. G. Williams, alias Athanasios George Loullas, deceased, in which John Libadiotte, executor, filed a provisional account, and certain legatees intervened. From a judgment dismissing opposition of legatees, they appeal. Modified and affirmed.

William J. Formento and F. F. Teissier, both of New Orleans, for appellants.

B. B. Howard, of New Orleans, for appellee.

By Division B, composed of DAWKINS, LAND, and LECHE, JJ.

DAWKINS, J. Appellee has moved to dismiss this appeal upon the grounds, first, that appellant did not apply for a new trial in the lower court, and, second, "that no citation of appeal was issued or served therein."

The first ground is without merit, for it is settled that a party cast does not have to apply for a new trial to entitle him to the right of appeal. Levert v. Berthelot, 127 La. 1004, 54 South. 329; Connelly v. So. Pac. Co., 140 La. 120, 72 South. 829; Grevemberg v. Roane, 133 La. 679, 63 South. 280.

As to the second point, there is nothing in the minutes or otherwise to show that the motion for appeal was made or filed in open court. It is in the form peculiar to practice in this city by which the proposed appellants recite that "on motion," suggesting that they are aggrieved by the judgment of the lower court, "it is ordered by the court" that the appeal be granted, which motion and order is signed by the judge at its

conclusion, with the notation "New Orleans, La., May 24, 1923."

[1, 2] Of course, if the motion was made in open court, "at the same term," under express provision of the Code of Practice (article 573) no petition and citation of appeal was necessary. However, if this was not done, then there was not only no citation of appeal, but no prayer therefor, and hence we would not be justified in remanding the case for citation, but would be compelled to dismiss the appeal.

As the record stands, there is nothing left to us but to dismiss the appeal; but, if on application for rehearing, a proper showing is made of the ability of defendant to establish, by correction of the minutes or otherwise, that the motion for appeal was properly taken in open court, then we might, in the interest of justice, entertain a motion to that end.

For the reasons assigned the appeal is dismissed, with cost.

On Rehearing. On Motion to Dismiss Appeal.

By the WHOLE COURT.

LECHE, J. The appellee in the above matter has filed a motion to dismiss this appeal on two grounds: (1) That appellant has failed to apply in the trial court, either for a rehearing or for a new trial, and therefore has not exhausted his remedies before appealing; and (2) "that no citation of appeal was issued or served herein."

[3] 1. The first ground presents no reason for the dismissal of the appeal. The case does not come into this court by virtue of a writ of error or a writ of review. There is no rule in law or jurisprudence in this state, requiring the party cast in a suit, to apply for a rehearing or for a new trial before he may appeal. The rule in jurisprudence is otherwise. Levert v. Berthelot, 127 La. 1004, 54 South. 329; Connelly v. Southern Pacific Co., 140 La. 120, 72 South. 829;

Grevemberg v. Roane, 133 La. 679, 63 South. 280.

[4, 5] 2. The second ground for dismissal was waived by pleading the first one. Appearance for any other purpose is a waiver of the motion to dismiss for want of citation of appeal. Commercial National Bank v. Sanders, 132 La. 174, 61 South. 155; Vallee v. Hunsberry, 108 La. 138, 32 South. 359. Again, it appears from the additional documents filed in order to complete the transcript that the appeal was taken by motion in open court at the same term, and therefore that no citation of appeal was necessary. Vallee v. Hunsberry, 108 La. 137, 32 South. 359. The motion to dismiss is therefore overruled.

O'NEILL, C. J., concurs in the result on the ground that there was no need for a citation of appeal.

On the Merits.

By Division B, composed of Justices DAWKINS, LAND, and LECHE.

LAND, J. A. G. Williams, whose name in Greek is Athanasios George Loullas, departed this life at his domicile in the city of New Orleans July 29, 1922.

The decedent died without ascendants or descendants, or forced heirs. He left two last wills and testaments. In one of these he appointed John Libadiotte executor and directed the purchase of a lot in a cemetery and the erection thereon of a marble tomb. In the other he instituted his nephews and nieces as legatees for certain amounts, and directed that his executor should "take $200 for his expenses and trouble to be paid from the bank."

As shown by the provisional account filed by the executor, the assets of the estate of the testator are estimated at the sum of $21,031.34. The legacies, including the $200 left to the executor, aggregate the sum of $6,550, while the total liabilities and legacies

amount to $7,957.33, leaving a balance of $13,057.33. The provisional account contains the following notation:

"N. B. Bal. in hands of executor for construction of marble tomb and purchase of lot in cemetery as per directions in will, and for costs & legal charges."

On September 26, 1922, the Greek Consul, on behalf of certain legatees under the will, filed an intervention, attacking the validity of the wills, and, in the event said wills should be declared valid and in force, prayed, in the alternative, that an amount in proportion to the means and station in life of the deceased be used by his executor for the purpose of purchasing a site and erecting a tomb for the remains of the deceased, and not the entire balance appearing in the provisional account. On October 14, 1922, certain legatees, represented by their agent, filed a similar intervention, with a similar alternative demand and prayer.

While exceptions and answers were filed by the attorney representing the executor, these interventions have not yet been tried and disposed of by the lower court. On December 1, 1922, the executor filed his final account, showing the payment of all legacies, including that of $200 to the executor, and also the following items:

Commission of executor...................... $ 528 00
Erection of tomb.............................. 7,350 00
Lot in Metarie Cemetery...................... 750 00
Perpetual care of tomb........................ 400 00
Attorney's fees paid.......................... 1,350 00
Attorney's fees balance due.................. 883 00
   ($553 balance due for services in succession; $350 due for services rendered deceased.)"

On December 5, 1922, the legatees filed an opposition to the final account of the executor, opposing each and every item on said account, and particularly the fee of the attorney for the executor, and for services rendered the deceased, alleging that said fees are excessive and should be materially reduced. Opponents also attack the commission claimed by the executor, a legatee under

the will, and the expenditure by him of the sum of $8,500 for the purchase of a cemetery lot, tomb, and its perpetual care.

The opposition of the legatees to all of these items on the final account of the executor was dismissed by the trial judge, and the case is now before us on appeal for a review of the decision of the lower court.

### 1. Commission of Executor.

[6] Article 1686 of the Revised Civil Code declares that—

"Testamentary executors, to whom the testator has bequeathed any legacies or other gifts by his will, shall not be entitled to any commission unless the testator has formally expressed the intention that they should have the legacies over and above their commission."

The testator has not expressed in his will such intention. As the executor has accepted the legacy left him by the testator, the legacy must stand in lieu of commissions, as the compensation fixed by the testator himself for the services to be rendered by him. The courts are without authority to increase or diminish the compensation in such cases. Succession of Fisk, 3 La. Ann. 705; Succession of Ross, 1 La. Ann. 129; Mon et al. v. Garnier, 6 La. 326; Succession of Filhiol, 123 La. 508, 49 South. 138.

The dismissal of the opposition to this item was erroneous.

### 2. Erection of Tomb, Etc.

[7] The opposition to the cost of the erection of the tomb and the expense for its permanent maintenance is without merit. The testator in his last will and testament directs the executor to construct a marble tomb for the reception of his remains, and specifies that it shall be built high above ground, and shall be sealed perpetually, and that his name shall be inscribed upon it both in English and in Greek. The evidence shows that during his lifetime the testator had advised his executor that he desired a

tomb of marble, to be chiseled after the Byzantine style of architecture, which was practiced by the Greek Church during the whole of the Middle Ages. The testator was a Greek, and a member of the Greek Catholic Church. It was most natural, as he had means ample for such purpose, that he should select the type of architecture for a tomb in keeping with that of his adopted church.

The testator had no forced heirs. He was under no legal duty to bequeath any portion of his estate to the legatees named in his will, as they are only collateral relations. These legatees have received their respective bequests in full; all that the testator intended that they should receive.

The evidence shows that the cost of the tomb and the expense for its perpetual keeping are reasonable. It is satisfactorily proven that such a structure composed of marble, an expensive material, could not be erected, as specified by the testator, at a less cost.

[8] Remembering how soon the dead are forgotten after the estate has passed into the hands of heirs living in distant countries, the executor, in our opinion, acted wisely in providing for the perpetual keeping of the tomb of the testator by intrusting his final resting place to the care and custody of the Metairie Cemetery Association, whose business it is to look after such matters. It was a provision against neglect; an expense necessitated by the circumstances of the case, and incurred to preserve the tomb erected to the memory of the testator, in obedience to his final request. There are neither forced heirs nor creditors to be satisfied in this particular case. The dying wish of the testator in this matter should therefore be respected. As the tomb of the testator was never to be opened under his directions in the will, the executor selected a burial lot in Metairie Cemetery, because of the fact it is located in a portion of the city which, in all probability, will be a cemetery always.

The price of the lot is also shown to be reasonable.

### 3. Attorney's Fees.

[9] The executor has allowed in his provisional and final accounts the following attorney's fees:

| | |
|---|---:|
| Luzenberg & Robinson, attorney's fees opening succession (provisional account) | $ 50 00 |
| B. B. Howard, attorney's fees on % (provisional account) | 150 00 |
| Attorney's fees paid B. B. Howard (final account) | 1,350 00 |
| Attorney's fees balance due B. B. Howard ($883) $350 due by deceased, balance due by estate | 553 00 |
| Total | $2,103 00 |

The item $553 in above account should be $533, and the total $2,083.

As the inventory estimates the estate at the sum of $21,031.24, the executor has allowed attorney's fees in a sum, approximately, of 10 per cent. on the total value of the estate.

Out of the attorney's fees charged against the estate the attorney for the executor is allotted the sum of $2,053 (it should be $2,033), or over 9 per cent. on the full inventoried value. This sum, in our opinion, is excessive. There has been no complicated litigation, or unusual expenditure of time or labor in the winding up of the estate. Inventory was taken and the will was probated. The provisional account was filed and homologated. A rule claiming the ownership of certain jewelry was tried and decided in favor of mover. The final account was filed, and the opposition to same was tried below, and is now being considered by this court. There were several applications made for the sale of stock in order to raise funds for the payment of debts and legacies. The entire estate of the deceased consisted almost entirely of building and loan stock and bank deposits. The interventions filed by the Greek Consul and the legatees have not been tried, and are evidently abandoned, in so far as any attack upon the validity of the

wills is concerned. The legatees have accepted and received their legacies. The alternative demand contained in said interventions is virtually being disposed of in our passing upon the opposition to the executor's ·final account.

. [10] In the fixing of fees of attorneys employed by executors, the exertion of legal knowledge, the responsibility incurred, the labor bestowed, and the amount involved constitute the principal factors to be considered. Succession of Percival, 138 La. 543, 70 South. 505.

[11] In Hunt v. Hill, 138 La. 595, 70 South. 526, we said:

"It appears from the foregoing review of our jurisprudence that the attorney's fees allowed in succession matters have ranged from 2 to 5 per cent. of the amount of the inventory. A fee as great as 10 per cent. was allowed in only one of the cases to which we are referred. That was in a receivership proceeding, where the fees of the attorneys of the receiver amounted to only $921.93. In only one of the successions to which we have been referred did the attorney's fee exceed 5 per cent. That was in the Succession of Rabasse, involving much litigation and several appeals to this court; and a fee of $6,000—not quite 5¼ per cent.— was allowed."

See, also, Maloney v. Schulingkamp, 151 La. 497, 91 South. 852.

It is true that the amount of fees claimed by the attorney for the executor is based upon his testimony and the expert testimony of several members of the bar, in estimating attorney's fees; however, the court must exercise its own judgment, guided, but not controlled, by the expert testimony of lawyers. Whitney-Central National Bank v. Sinnot et al., 136 La. 95, 66 South. 551; Dinkelspiel & Hart v. Pons, 119 La. 236, 43 South. 1018; Hunt v. Hill, 138 La. 590, 70 South. 522.

Taking into consideration the services performed by counsel for the executor in the lower court and in this court on appeal, we are of the opinion that a fee of $1,051.55, or 5 per cent. on the amount of the inventory, is adequate compensation.

The fee allowed counsel for the executor in the final account is the sum of $1,350+$553, or $1,903 (it should be ($1,883). This amount should be reduced to the sum of $1,001.55, counsel having previously received in the provisional account $150.

The item of $350 on the final account is claimed as a fee due by the deceased for legal services rendered to him during his lifetime.

[12] Under article 2277 of the Revised Civil Code, an attorney's claim for professional services in excess of $500 rendered decedent must be proved by at least one credible witness and other corroborating circumstances. Succession of Bourgeois, 151 La. 580, 92 South. 122.

The attorney testifies to his fee for advice given decedent as to his will and for the preparation of a form of will, but we fail to find in the record any evidence of other circumstances to corroborate this claim.

For the reasons assigned, the judgment appealed from is amended by striking from the final account filed by the executor the item of $528 for commission, and the item of $350 claimed as due as a fee for services rendered the deceased. Said judgment is further amended by reducing the items of $1,350 and $553, or $1,903 ($1,883), attorney's fees paid, and the balance due for services in the succession, to the sum of $1,001.55. And said judgment, as amended, is affirmed; the succession to pay all costs.

Rehearing refused by the Whole Court.